UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BENFORD DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00488-SEB-TAB |
| | ) |
| WEXFORD OF INDIANA, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER DISCUSSING PLAINTIFF'S AND CORRECTIONAL
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Benford Davis alleges that he was deprived of necessary hernia surgery for over a year while incarcerated at Pendleton Correctional Facility (PCF), then deprived of necessary postsurgical care. Mr. Davis and all eleven defendants have moved for summary judgment.

This order addresses the two correctional defendants' motion for summary judgment and Mr. Davis's motion for summary judgment as it pertains to them. Dkts. 85, 90. The Court has addressed the correctional defendants' motion for summary judgment, and Mr. Davis's motion as it pertains to them, in a separate order. Dkt. 104.

Viewed in the light most favorable to Mr. Davis, the record would not allow any reasonable jury to find that Defendant Jonathan Jackson violated Mr. Davis's constitutional rights. Therefore, the state defendants' motion is **granted**, and Mr. Davis's motion is **denied**, as to claims against Lieutenant Jackson.

Meanwhile, the current record precludes summary judgment for either side on Mr. Davis's claims against Defendant Rachelle Brumfiel. Undisputed evidence would prevent a jury from finding in Mr. Davis's favor on Eighth Amendment claims against Officer Brumfiel—but that conclusion relies in part on evidence not submitted or addressed by the correctional defendants.

Therefore, Mr. Davis's motion for summary judgment is **denied** as to Officer Brumfiel, and the state defendants' motion is **denied** as to claims against Officer Brumfiel. However, the Court will direct Mr. Davis to **show cause** pursuant to Federal Rule of Civil Procedure 56(f) why it should not grant summary judgment as to Eighth Amendment claims against Officer Brumfiel.

## I.
## STANDARD OF REVIEW

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

2

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## FACTUAL BACKGROUND

Mr. Davis is pursuing Eighth Amendment medical care and First Amendment retaliation claims against Defendants Lieutenant Jonathan Jackson and Officer Rachelle Brumfiel. The following facts are undisputed except where noted.

**A.     February 17 Grievance and February 24 Encounter With Lieutenant Jackson**

Mr. Davis arrived at PCF in November 2019 from another prison. Dkt. 93, Plaintiff's Undisputed Material Fact (UMF) 8. He had been diagnosed with an inguinal hernia. *Id.*, UMF 5. The Court chronicled the prison medical staff's treatment of Mr. Davis's hernia in a separate entry and revisits it here only as necessary to inform his claims against the correctional defendants.

In December 2020, Mr. Davis met with a surgeon, who recommended surgery to repair his hernia. *Id.*, UMF 43. In January 2021, Mr. Davis's primary care physician at the prison determined that the surgery should be delayed. *Id.* at UMF 46.

On February 17, 2021, Mr. Davis submitted the following grievance through the prison's grievance system:

> I've been complaining about my hernia since arriving here (November 6th, 2020). I was approved for surgery but, I've been having extreme pain every day!!! I've been submitting "Health Care Forms" since December, but haven't received a pass nor any medical treatment!!!! I went to "Ascension STV Anderson" in Anderson, Indiana to see the surgeon, who would be performing the surgery. This was last year, but I haven't had the surgery, and I'm still having a "great deal of pain, every day"!!!!!! I gave Officer Brumfiel a medical health care form along with a copy of my "CT scan of my abdomen/pelvis oral." Ofc. Brumfiel said the Nurse said, she would decide if I would be seen, I haven't!!!

Dkt. 91-1 at 372 (emphasis added).

Lieutenant Jackson was the custody supervisor for PCF's medical unit, where Mr. Davis lived. Dkt. 86-1 at ¶¶ 4–5. He "assisted in providing security for the medical unit and oversight over the offenders that visited medical personnel" and "assisted with communications and requests between the medical unit and offenders." *Id.* at ¶ 6. He "did not make the determinations regarding who saw medical personnel" but relayed inmates' requests to the medical personnel. *Id.* at ¶ 7.

On February 24, 2021, Mr. Davis was experiencing serious pain from his hernia plus a kidney stone and a cyst on his kidney. As Mr. Davis was walking from the chow hall to his cell, an officer saw Mr. Davis, radioed Lieutenant Jackson, and asked if he should send Mr. Davis to the infirmary. Lieutenant Jackson told the officer to direct Mr. Davis to return to his housing unit and ask the officer on duty there to call the infirmary so the medical staff could determine whether or it wished to see Mr. Davis. Mr. Davis followed those instructions, but the officer in his unit never called the infirmary. *See* dkt. 86-3 at 61:7–65:24, 70:10–73:18.

Mr. Davis believes Lieutenant Jackson was in the infirmary when he insisted that Mr. Davis return to his unit and seek permission to go to the infirmary. *See id.* at 63:12–64:7, 72:8–23. However, no evidence but Mr. Davis's testimony supports that conclusion, and Mr. Davis's testimony does not establish how he knew that Lieutenant Jackson was in the infirmary.

4

Lieutenant Jackson attests that he was not aware of Mr. Davis's February 17 grievance before the officer asked him about sending Mr. Davis to the infirmary on February 24. Dkt. 86-1 at ¶ 10. Mr. Davis has not presented evidence that Lieutenant Jackson knew specifically about the February 17 grievance. In fact, it appears that the grievance specialist rejected Mr. Davis's February 17 grievance and returned it to him on February 26, 2021. Dkt. 86-4 at 2. Mr. Davis also theorizes that Lieutenant Jackson may have required him to return to his housing unit instead of proceeding directly to the infirmary because he was mad that Mr. Davis filed grievances regarding his friends and colleagues on the medical staff. *See* dkt. 91 at 25–26. However, the February 17 grievance is the only grievance in the record submitted before the February 24 incident.

**B.     Officer Brumfiel**

Mr. Davis attests that he submitted the February 17 grievance and all other relevant grievances to Officer Brumfiel because he was "on restricted movement" and had no alternative means to submit them. *See* dkt. 100 at ¶¶ 12–13.

Officer Brumfiel filed a conduct report on February 28, 2021, charging Mr. Davis with having unauthorized material blocking her view of his bed location. Dkt. 86-5 at ¶ 6. The record does not clarify whether Mr. Davis was found guilty of or punished for the conduct violation.

On March 9, 2021, Mr. Davis submitted a grievance stating: "Officer Brumfiel retaliated against me with a false conduct report for filing grievances against medical." Dkt. 91-1 at 396. A grievance specialist returned that grievance to Mr. Davis on March 24, 2021, explaining that Mr. Davis could not pursue a grievance regarding an ongoing disciplinary case. Dkt. 86-6 at 1.

Mr. Davis states that, in March 2021, he was prescribed the pain medication Tramadol, but it was not immediately available. Mr. Davis states that a member of the medical staff called Officer Brumfiel on March 12, 13, and 14 and told her to tell Mr. Davis his medicine was in, but

5

Officer Brumfiel never relayed the message. As a result, Mr. Davis did not receive the medicine until he visited the infirmary of his own accord on March 14. *See* dkt. 86-3 at 88:19–93:5.

However, medication administration records submitted with the medical defendants' motion show that Mr. Davis received tramadol injections twice daily from March 8–14, once daily from March 15–19, and twice on March 20 and 21. Dkt. 96-1 at 75–76. Mr. Davis has not contested the admissibility or truthfulness of that evidence.

On March 18, 2021, Mr. Davis submitted a grievance alleging that Officer Brumfiel prevented him from getting his medicine from March 12–18. Dkt. 86-7 at 1. The record does not clarify who received this grievance after Mr. Davis submitted it.

On March 22, 2021, Officer Brumfiel filed a conduct report alleging that, when she went to escort Mr. Davis to a medical appointment, Mr. Davis said he was going to end her career and called her a bitch. Dkt. 86-8. Mr. Davis denies the allegations and attests that he was found not guilty at his disciplinary hearing. Dkt. 86-3 at 101:15–102:11. Mr. Davis also attests that, during their interaction on March 22, Officer Brumfiel stated she was going to get him moved out of the medical unit for filing grievances. *Id.* at 82:1–83:5.

Finally, Mr. Davis alleges that, on an unspecified date after his hernia surgery, Officer Brumfiel received a "count letter" from the medical department granting inmates permission to visit the medical department; the letter allowed Mr. Davis to visit medical to get his postsurgical dressing changed; Officer Brumfiel did not inform him that he was listed on the count letter; and, in fact, she hid the count letter so no officer could find it and send Mr. Davis for his dressing change. Dkt. 86-3 at 104:3–111:25. Mr. Davis learned he was on the count letter when he was at sick call. *Id.* at 106:18–107:9. Mr. Davis attests that he received regular dressing changes

6

after he returned from surgery, and his medication administration records show that he received dressing changes daily from April 6–16. *See id.* at 34:3–36:1; dkt. 96-1 at 75.

### III.
### Legal Standards

Mr. Davis alleges that the defendants violated his Eighth Amendment right to adequate medical care and retaliated against him for exercising his First Amendment rights. These claims are governed by the following legal standards.

**A.     Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Deliberate indifference requires more than negligence or even objective recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff "must provide evidence that an

official actually knew of and disregarded a substantial risk of harm." *Id*. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

"Non-medical defendants . . . can rely on the expertise of medical personnel." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). "Non-medical defendants cannot simply ignore an inmate's plight," but, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* A non-medical defendant satisfies the Eighth Amendment by investigating an inmate's complaints and referring them to the responsible medical providers, unless the defendant knows or has reason to believe that the medical staff is mistreating the inmate or not treating him at all. *Id.* at 755–56.

Finally, "even in the field of constitutional torts," *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), "there is no tort without an actionable injury caused by the defendant's wrongful act," *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014). As a result, Mr. Davis must prove not only that the defendants were deliberately indifferent to his serious medical needs, but that their deliberate indifference actually injured him.

**B.     First Amendment**

To establish a prima face case for retaliation on summary judgment, a plaintiff must have evidence to support three elements. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

"The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be 'likely [to] deter a person of ordinary firmness from continuing to engage in protected activity.'" *Id.* at 880 (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Id.*

The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "Suspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists. *Id.* To establish that retaliatory animus was a motivating factor in the defendants' retaliatory action, the plaintiff must show, at a minimum, that the defendants were aware of the plaintiff's protected activity. *See, e.g.*, *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (affirming grant of summary judgment when inmate presented only "vague and confusing testimony that [the inmate], at some point, named [the defendant] in a grievance" but "no evidence about what the grievance said or whether [the defendant] even saw or knew about it").

If the plaintiff is able to establish the elements of a retaliation claim, "'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Hawkins v. Mitchell,* 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (cleaned up). "And if the defendant does this, 'the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus.'" *Id.* (quoting *Thayer*, 705 F.3d at 252). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer the proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

9

## IV.
## Analysis: Lieutenant Jackson

Viewed in the light most favorable to Mr. Davis, the record does not support Eighth or First Amendment claims against Lieutenant Jackson.

### A.   Eighth Amendment Claim

On February 24, 2021, an officer called Lieutenant Jackson, reported that Mr. Davis was in serious pain, and asked whether he should be sent to the infirmary. Lieutenant Jackson did not direct the officer to send Mr. Davis straight to the infirmary. Instead, he directed the officer to send Mr. Davis back to his housing unit, ask the officer in charge there to call the infirmary, and allow the infirmary to decide whether to see him.

The Eighth Amendment did not obligate Lieutenant Jackson to admit Mr. Davis to the infirmary. As a matter of law, he was entitled to defer that medical decision to the prison's medical staff. *Arnett*, 658 F.3d at 755–56. Lieutenant Jackson exercised that deference acceptably on February 24.

Mr. Davis responds that Lieutenant Jackson acted contrary to Indiana Department of Correction policies, which hold that non-medical staff members may not "approve or disapprove requests for access to health care services" and must permit "immediate access when health emergencies and urgencies occur." *See* dkt. 99 at 5–6. But a correctional officer does not violate the Eighth Amendment by failing to comply with prison policy. *See Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates."). Regardless, the evidence does not show that Lieutenant Jackson approved or disapproved a health care request; it shows that he directed Mr. Davis to present that request to the medical staff through a different channel. Further, the evidence establishes that Mr. Davis was in "a great deal of pain" on February 24, *see, e.g.*,

10

dkt. 86-3 at 63:5–11, but Mr. Davis has not presented evidence from which a jury could infer that his condition was so dire that he was unable to walk back to his unit or that he required immediate care.

The fact that the officer in charge of Mr. Davis's unit did not call the infirmary does not change the outcome, as there is no evidence Lieutenant Jackson knew about her inaction and he can only be liable for his own acts or omissions. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). Likewise, Mr. Davis's testimony that Lieutenant Jackson was already in the infirmary and could have spoken to the medical staff himself does not require a different outcome. *See, e.g.*, dkt. 86-3 at 64:4–7, 72:8–23. Mr. Davis has not tendered other evidence showing Lieutenant Jackson was in the infirmary when he was called, and his testimony does not demonstrate how he knows Lieutenant Jackson was already in the infirmary. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Accordingly, his Eighth Amendment claim against Lieutenant Jackson fails.

**B.     First Amendment Claim**

Mr. Davis's First Amendment claim against Lieutenant Jackson fails on the causation element. Simply put, the record would not allow a reasonable jury to find that Lieutenant Jackson knew about Mr. Davis's February 17 grievance before he declined to admit Mr. Davis to the infirmary on February 24. *See Daugherty*, 906 F.3d at 610.

The crux of Mr. Davis's claim is that Lieutenant Jackson retaliated against him "for filing grievances against his friends and colleagues" on the prison medical staff. Dkt. 99 at 1. But

Mr. Davis's February 17 grievance is the only grievance in the record that predates the February 24 incident. Lieutenant Jackson attests that he was not aware of Mr. Davis's February 17 grievance before February 24. Dkt. 86-1 at ¶ 10. And the grievance records indicate that the grievance specialist rejected Mr. Davis's February 17 grievance and returned it to him on February 26, 2021. Dkt. 86-4 at 2. In short, the only evidence regarding Mr. Davis's grievances indicates that he submitted one before February 24 and that Lieutenant Jackson knew nothing about it. Mr. Davis has not presented contrary evidence. Consequently, his First Amendment claim against Lieutenant Jackson fails.

## V.
## Analysis: Officer Brumfiel

Viewing the record in the light most favorable to Mr. Davis, no reasonable jury could find in his favor on an Eighth Amendment claim against Officer Brumfiel. However, the Court reaches this conclusion by considering evidence presented by the medical defendants and not addressed by the correctional defendants. Accordingly, under Federal Rule of Civil Procedure 56(f), the Court will afford Mr. Davis an opportunity to show cause why his Eighth Amendment claim against Officer Brumfiel should not be dismissed. Meanwhile, material factual disputes preclude summary judgment for either side on Mr. Davis's First Amendment claim against Officer Brumfiel.

A.  **Eighth Amendment Claim**

Eighth Amendment claims against Officer Brumfiel could only arise from two incidents: her alleged failure to notify Mr. Brumfiel in March 2021 that his tramadol was available in the infirmary, and her alleged hiding of the medical count letter in April 2021 to prevent Mr. Davis from obtaining materials to change his dressings. Officer Brumfiel disputes that either episode occurred, *see* dkt. 86-5 at ¶¶ 10–12, 16–19, creating a factual dispute.

12

That dispute ultimately is not material because undisputed evidence shows that Mr. Davis visited the infirmary and received his medications and dressing changes on the dates in question. Dkt. 96-1 at 75–76. In other words, even if a jury could find that Officer Brumfiel intentionally withheld notifications that Mr. Davis's medications were available or hid the count letter as alleged, it would have no evidentiary basis for finding that her misconduct injured Mr. Davis. *See Fields*, 740 F.3d at 1111. However, that conclusion is based on evidence not presented or argued by the state defendants. Accordingly, summary judgment is not warranted for either side on the current record, but the Court will direct Mr. Davis to show cause why summary judgment should not be granted in Officer Brumfiel's favor on Eighth Amendment claims.

**B.     First Amendment Claim**

Mr. Davis's retaliation claim against Officer Brumfiel is based on four allegedly retaliatory incidents: the February 28, 2021 conduct report; her failure to notify him that his medication was available in the infirmary in March 2021; the March 22 conduct report; and her hiding of the count letter in April 2020.

Officer Brumfiel attests that she issued her conduct reports in good faith and denies that she ever hid a count letter or failed to notify Mr. Davis that his medication was available. *See* dkt. 86-5. As a result, material factual disputes preclude summary judgment for Mr. Davis.

Meanwhile, Officer Brumfiel contends that she is entitled to summary judgment because no evidence shows that she was aware of his grievances at the time of the allegedly retaliatory acts. *See* dkt. 87 at 10–12. However, Mr. Davis's declaration testimony that he submitted his grievances to Officer Brumfiel creates a material factual dispute that precludes summary judgment in her favor. Accordingly, summary judgment is not available to either party.

13

## VI.
## Conclusion

Mr. Davis's motion for summary judgment, dkt. [90], is **denied**.

The state defendants' motion for summary judgment, dkt. [85], is **granted** as to claims against Defendant Jonathan Jackson. Claims against Lieutenant Jackson are **dismissed with prejudice**, and the **clerk is directed** to terminate him from the docket as a defendant. No partial final judgment will issue.

The state defendants' motion, dkt. [85], is **denied** as to all claims against Defendant Rachelle Brumfiel. First Amendment claims against Officer Brumfiel will be resolved by settlement or trial. Pursuant to Federal Rule of Civil Procedure 56(f)(2) and (3), Mr. Davis will have **through March 29, 2024**, to **show cause** why the Court should not grant Officer Brumfiel summary judgment on Eighth Amendment claims for the reasons discussed in Part V(A) above. The correctional defendants will have **through April 12, 2024**, to file any response. **Neither deadline will be extended.** The **clerk is directed** to change the spelling of Officer Brumfiel's name on the docket from "Rachael Brumsfield" to "Officer Rachelle Brumfiel." *See, e.g.*, dkt. 86-5.

**IT IS SO ORDERED.**

Date: 3/5/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BENFORD DAVIS
860681
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
Stoll Keenon Ogden PLLC
rachel.johnson@skofirm.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Adam Jeffery Strahan
Lewis and Wilkins
strahan@lewisandwilkins.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com